355 S.E.2d 640

**Edith Marie BLANTON, formerly Artrip**

v.

**William E. ARTRIP.**

No. 17254.

Supreme Court of Appeals of West Virginia.

April 1, 1987.

Robert L. Godbey, Huntington, for appellant.

Stephen Lewis, Wayne, for appellee.

PER CURIAM:

The appellant, Edith Marie Blanton, appeals from an order of the Circuit Court of Wayne County denying her motion for reconsideration of the court's ruling summarily dismissing an attachment against her former husband, William Artrip, the appellee. For the reasons set forth below, we reverse.

The appellant and the appellee were married on June 19, 1954 in Wayne County, West Virginia. On July 21, 1967, the appellant filed suit for divorce in the Circuit Court of Wayne County seeking, *inter alia*, custody of four infant children born of the marriage. She also filed an affidavit with the court averring that the appellee was a nonresident of the State. Based upon this affidavit, an order of publication was entered against the appellee and a hearing was held on September 25, 1967.

A final divorce decree was entered on September 29, 1967 awarding a divorce to the appellant. She was also granted custody of the couple's four children, subject to visitation rights in the appellee. The court reserved the right to fix alimony, child support and other *in personam* relief until personal service of process could be had upon the appellee.

In April of 1967, the appellant had obtained a non-support warrant against the appellee and in November, 1967, he was arrested pursuant to that warrant. While incarcerated in the Wayne County Jail, the appellee was personally served with the divorce complaint and a hearing on the *in personam* relief sought by the appellant was held on November 29, 1967. By order entered December 7, 1967, the court awarded the appellant $190.00 per month child support and $10.00 per month alimony. The order also required the appellee to pay the outstanding debts of the parties and the appellant's attorney fees. Apparently in an attempt to collect the attorney fees from her former husband, the appellant caused a suggestion and a writ of execution to be issued against the appellee on December 7, 1967. The sheriff's return showed that no property was found. Upon being released from jail, the appellee left the State and since that time has not made any payments pursuant to the court's order.

In June of 1985 the appellant learned that the appellee would be in Wayne County visiting his family on Friday, June 7, 1985. In order to obtain an attachment, she executed an affidavit in which she averred that the appellee had failed to comply with the court's December 7, 1967 order, in that he had failed to pay the alimony and child support ordered and also failed to pay one of the existing obligations of the parties which he had been ordered to pay. The circuit court issued the order of attachment on June 7, 1985 and pursuant thereto the appellee was arrested and placed in the county jail the same day. He remained in jail until Monday, June 10, 1967 when a hearing on the attachment was held.

At that hearing, the court summarily dismissed the attachment on the grounds that there had been no rule issued prior to the attachment and released the appellee from jail. The record indicates that the appellant attempted to have a rule issued that same day but the appellee had left the State by the time the paper work was completed.

In *Ex Parte Kirby*, 100 W.Va. 70, 130 S.E. 86 (1925), we recognized that while the usual practice in West Virginia is to issue a rule to show cause in the first instance, *State v. Frew and Hart*, 24 W.Va. 416 (1884), an attachment sometimes issues without a rule: "The history of contempt proceedings shows that the law concedes to judges and courts the inherent right and authority to issue an attachment in the first instance, without an antecedent rule, where the case is urgent or the contempt is flagrant."

In *Kirby, supra,* the Court explained its reasoning in upholding an attachment without a rule:

The attachment herein is merely the process of the court, and serves the same purpose as a warrant or other writ whereby an accused is apprehended and held for trial. The order directing the attachment does not purport to find the petitioners guilty, but extends to them an opportunity to be heard....

Although *Ex Parte Kirby* involved the violation of an injunction in a labor dispute, the Court cited *Petrie v. People*, 40 Ill. 334 involving payment of alimony:

Where the defendant in a suit in chancery for divorce neglects to obey an order therein to pay alimony pendente lite, an attachment may be issued against him for contempt, without any notice to him that an attachment would be asked, or any rule to show cause why it should not be issued.

In *Hendershot v. Handlan*, 162 W.Va. 175, 248 S.E.2d 273 (1978), our most recent case involving an attachment being issued without a rule, the Court again recognized that there are exceptions to the practice of issuing a rule to show cause prior to issuing an attachment.

In *Hendershot*, the trial court issued a temporary order in a divorce proceeding awarding custody of a child to the mother. The father refused to turn the child over to the mother and the paternal grandparents instead absconded with the child. The grandfather was subsequently arrested for violation of the court's custody order, incarcerated, and ordered to appear and show cause why he should not be held in contempt of court for violating the court's order. We refused to prohibit the circuit court from proceeding against the grandfather in the contempt proceeding citing with approval Syllabus Point 1 of *Ex Parte Kirby, supra:* "When an order of a court has been disobeyed and the case is urgent or the contempt flagrant, the court may issue an attachment in the first instance without the usual antecedent rule."

The Court in *Hendershot* reasoned that because the custody and welfare of a child were at stake, the trial court was fully justified in issuing a capias and imposing a bond to secure the grandfather's presence at a hearing. "The capias issued by the respondent did not purport to find the petitioner guilty of contempt but merely provided the means by which he could be held to answer the charges." 162 W.Va. at 180, 248 S.E.2d at 276.

In the case before us, it appears from the record that if the custody of the four chil-

dren born to the appellant and appellee were at issue, the trial court would not have been reluctant to uphold the issuance of the attachment without a prior rule. However, because the issue was not custody, but was the children's support, the court found that this case did not fall within the boundaries of our prior holdings. We disagree. Under the particular circumstances of this case, we think the court was within its discretion in issuing an attachment against the appellee even in the absence of a prior rule. The appellee argues that the case was not urgent and that his child support and alimony obligations had been existing for years. The appellee ignores the fact that the law is that an attachment may be issued without an antecedent rule either when the case is urgent *or* the contempt is flagrant. Clearly, the appellee disobeyed the court's 1967 order entered in the divorce proceeding. He does not contend otherwise. The appellant averred in her affidavit filed with the court that the appellee had paid nothing under the order and that he owed her approximately $18,564.65 plus interest.

 We are of the view that remaining absent from the State except on limited occasions and refusing to pay for over eighteen years any monies owed toward satisfaction of his obligations under the court's order brings this case within the concept of flagrant. The appellee had in fact not only violated the court's 1967 order but had continued to violate it throughout the entire period of the children's infancy. The appellee argues that a rule to show cause should have been issued before he was arrested under the attachment. Such an act would surely have been in vain after so many years. *Lex neminem cogit ad vana seu inutilia peragenda.* The attachment was not issued as an indication of the appellee's guilt; it was issued to require his presence at a hearing to determine his guilt or innocence of the contempt.

Accordingly, the judgment of the Circuit Court of Wayne County is reversed and the case is remanded for a hearing on the contempt issue.

Reversed and remanded.